Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Waterloo Rescue, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | |
| ADAMS 3, LLC, | Case No. 22-205-ELG |
| Debtor. | Chapter 11 |
| YSRTL LLC TES CUSTODIAN, | |
| Plaintiff, | Adv. Case No. 23-10033-ELG |
| v. | |
| WATERLOO RESUCE, LLC, *et al.* | |
| Defendants. | |
| YSRTL LLC TES CUSTODIAN, | |
| Plaintiff, | Adv. Case No. 23-10030-ELG |
| v. | |
| WATERLOO RESUCE, LLC, *et al.* | |
| Defendants. | |

**OPPOSITION TO MOTION TO ABSTAIN AND TO REMAND**

1

Comes now Waterloo Rescue, LLC ("Waterloo Rescue" or the "Defendant"), by and through undersigned counsel, in opposition to the Motion to Abstain and to Remand (the "Motion") filed by YSRTL LLC TES CUSTODIAN ("YSRTL" or the "Plaintiff"), and states as follows:

I.     **Introduction**

YSRTL brings this case on the implicit theory that an order of this Honorable Court, conveying property "free and clear of liens," does not actually vest title in the purchaser sans the burden of pre-existing liens. YSRTL seemingly further asserts that when a plan of reorganization addresses the payment of priority tax claims, tax certificate holders on actual and derivate notice of the bankruptcy are not bound by the terms of that plan. And YSRTL equally reasons that those purchasing assets from a bankruptcy estate are ripe targets for litigation if YSRTL neglects to timely file an administrative expense claim in the subject bankruptcy proceeding.

Most importantly for instant purposes, though, YSRTL maintains these issues ought not be adjudicated by a bankruptcy court but, rather, are the exclusive province of District of Columbia Superior Court. YSRTL proposes a regime that, if accepted, would cripple congressional protections surrounding Section 363 sales while, simultaneously, rendering confirmed plans of reorganization little more than merely suggestive texts addressing how the claims of creditors might be potentially addressed. Yet YSRTL insists such facial attacks to the orders, jurisdiction, and dignity of this Honorable Court have no place being heard in this Honorable Court.

These positions of the Plaintiff are, of course, legally fantastical. The Motion is premised on the notion that a wholesale attack on the bankruptcy process does not give rise to a core proceeding; in reality, scarcely few proceedings are more core than those pending *sub judice*. If YSRTL wishes to bring litigation that seeks to undermine the orders of a federal court, and to risk

2

the imposition of sanctions in so doing, such is very much YSRTL's prerogative. But YSRTL cannot then feign outrage when that litigation is removed to federal court. And YSRTL has most certainly not established any cause that would justify returning such litigation back to state court.

## II.  Standard: Mandatory Abstention

The notion of so-called "mandatory abstention" derives from Title 28 of the United States Code, which provides, in relevant part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

As observed by the United States District Court for the District of Columbia, a six prong, conjunctive inquiry controls motions seeking to invoke mandatory abstention:

> Federal courts must abstain from hearing bankruptcy cases if (1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case; (4) federal jurisdiction is based solely on Section 1334 bankruptcy jurisdiction; (5) the action has already commenced in state court; and (6) the action can be "timely adjudicated" in state court.

*BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 115 F. Supp. 3d 119, 124 (D.D.C. 2015) (citing 28 U.S.C. § 1334(c)(2); *In re WorldCom, Inc.*, 293 B.R. 308, 331 (S.D. N.Y. 2003)).

## III.  Standard: Permissive Abstention

The doctrine of permissive abstention, in turn, is also derivative of Title 28 of the United States Code:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

3

28 U.S.C. § 1334(c)(1). As noted by this Honorable Court:

> When considering whether permissive remand or abstention is warranted, courts consider the following: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of applicable state law; (4) comity; (5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants."

*In re Kaiser Group Int'l, Inc.*, 421 B.R. 1, 16 (Bankr. D.D.C. 2009) (quoting *Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*, 2008 WL 2690731, at *5 (D.D.C. 2008) (citing *In re Merry–Go–Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998)); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D. N.Y. 1991).

### IV.     Argument: Mandatory Abstention is Inapplicable

As noted *supra*, there are six conjunctive elements requisite to invoke mandatory abstention; at least two are clearly absent here. YSRTL errs in asserting the subject proceeding (i) is not core and (ii) could not have been commenced in federal court. YSRTL is correct in contending the Plaintiff timely filed a motion to remand. Whether or not YSRTL is right in contending this matter could be timely adjudicated in state court is less clear.

First, and far and away most importantly, this is a core proceeding. YSRTL is suing to collect a tax for which a proof of claim was filed in the Debtor's case and, equally, is contending that a Section 363 sale expressly made "free and clear of liens" is not, in fact, free and clear of liens; this is a "matter[] concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). In so doing, YSRTL is also maintaining that its liens survived both a Section 363 sale *and* confirmation of a plan of reorganization, thereby requiring this Honorable Court to make a "determination[] of the validity[] [or] extent… of liens." 28 U.S.C. § 157(b)(2)(K). And since YSRTL brings suit against Waterloo solely because Waterloo acquired the subject real estate assets

from the Debtor's estate, this is most certainly a "proceeding[] affecting the liquidation of the assets of the estate…" 28 U.S.C. § 157(b)(2)(O).

The United States Court of Appeals for the Second Circuit has considered an analogous situation wherein a landlord asserted rent to be due and owing pursuant to a lease agreement, only to have the tenant seek bankruptcy relief and, through a Chapter 11 proceeding, assume and assign the subject lease. *In re Petrie Retail, Inc.*, 304 F.3d 223, 225 (2d Cir. 2002). The assignee "did not assume certain liabilities," with the sale order providing "that those holding excluded liabilities were 'enjoined from asserting or prosecuting any Claim or cause of action'" against the assignee. *Id.* at 226.

Seemingly undeterred by the bankruptcy court's order, the landlord in *Petrie Retail* declared the assignee to be in default on account of the assignor's putative unpaid rent. *Id.* at 227. The assignee, in turn, asked the United States Bankruptcy Court for the Southern District of New York to enter "an order enforcing the sale order's injunction as to excluded liabilities and finding [the landlord] in violation of the confirmation order for seeking to collect excluded liabilities." *Id.* The landlord then "argued that the bankruptcy court lacked subject matter jurisdiction over the dispute and personal jurisdiction over [the landlord], and that, regardless of the jurisdictional matters, the bankruptcy court should abstain from the action." *Id.*

The bankruptcy court found it had jurisdiction to hear the matter and, further, observed the issue to be core. This ruling was upheld on appeal by the United States District Court for the Southern District of New York. *Id.* at 225. And, on subsequent appeal, the Second Circuit found the controversy to be core for at least three reasons. First, "the sale order, plan of reorganization, and confirmation order set forth the rights [the landlord] could assert vis-a-vis [the assignee] in connection with the sale of the lease, specifically prohibiting actions for excluded liabilities,"

5

thereby rendering the matter core inasmuch as it concerned the "sale of property." *Id.* at 229 (citing 28 U.S.C. § 157(b)(2)(N)). Second, "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *In re Petrie Retail*, 304 F.3d at 230 (citing *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D. N.Y. 1997); *In re Johns–Manville Corp.*, 97 B.R. 174, 179–80 (Bankr. S.D. N.Y. 1989)). And, third, "the dispute between [the landlord] and [the assignee] involved an issue already before the bankruptcy court as part of its consideration of [the landlord's] claim against the estate. As such, the dispute uniquely affected and was uniquely affected by the core bankruptcy functions as to 'matters concerning the administration of the estate…'" *In re Petrie Retail*, 304 F.3d at 230 (citing 28 U.S.C. § 157(b)(2)(A)).

This case is markedly analogous. Instead of the assignment of a lease, the instant matter concerns the sale of real estate; otherwise, the salient facts align nearly perfectly, with a disgruntled pre-petition creditor seeking to collect from a bankruptcy court purchaser and with that creditor asserting abstention to be mandatory. The same statutory considerations that rendered *Petrie Retail* a core proceeding do, too, render this a core proceeding. And the mandatory abstention analysis accordingly need not proceed any further.

Second, YSRTL errs in contending "federal jurisdiction is based solely on Section 1334 bankruptcy jurisdiction…" *BGC Partners, Inc.*, 115 F. Supp. 3d at 124. The Plaintiff is a Florida limited liability company. *See* Articles of Organization, attached hereto as Exhibit A. Waterloo, in turn, is a Virginia limited liability company. *See* Complaint at ¶ 3. YSRTL was seeking, at the time this suit was filed, the sum of $100,552.07, plus interest, court costs, attorneys' fees, and expenses. *Id.* at ¶ 12. Accordingly, there exists diversity jurisdiction *sub judice*. 28 U.S.C. § 1332. And this suit could, as such, have very well been commenced in federal court.

6

The Plaintiff argues that language in the District of Columbia Code, providing suits to foreclose tax liens, "may" be brought in the Superior Court, means "jurisdiction is reserved for Superior Court." Motion at pp. 5-6; Motion at p. 6, n. 1. Yet, even putting aside the openly permissive use of the word "may" (as opposed to "shall"), a state cannot statutorily reserve jurisdiction exclusively to its own courts, to the exclusion of federal courts. *See, e.g.*, *Roberts & Schaefer Co. v. Hardaway Co.*, 945 F. Supp. 247, 250 (M.D. Fla. 1996) ("Other circuits, however, have been presented with the question of whether or not a state legislature's grant of exclusive jurisdiction to a specific state court bars federal courts sitting in diversity jurisdiction from possessing subject matter jurisdiction and have not recognized a states' ability to excluded federal courts subject matter jurisdiction.") (citing *Greyhound Lines, Inc. v. Lexington State Bank and Trust Co.*, 604 F.2d 1151 (8th Cir. 1979); *Akin v. Louisiana National Bank of Baton Rouge*, 322 F.2d 749 (5th Cir. 1963)). In fact, even where Congress reserves jurisdiction over certain matters to state courts, those claims can still be brought in federal court (or removed to federal court) where there exists diversity of citizenship. *Kopff v. World Research Group, LLC*, 298 F. Supp. 2d 50, 55 (D.D.C. 2003).

There do, too, exist other elements to mandatory abstention, each noted *supra*. Whether or not YSRTL can truly make a showing on those fronts remains to be seen. But, in any event, such considerations are ultimately moot – with this being a core proceeding, and with there being independent federal jurisdiction, the conjunctive test for mandatory abstention cannot be satisfied.

## V.     Permissive Abstention is Also Inappropriate

The flaws in YSRTL's assertion of mandatory abstention are notable; the flaws in its argument for permissive abstention are even more pronounced. This case is a facial attack on this Honorable Court's sale order and plan confirmation order, representing an apparent effort to render Section 363 sales "free and clear of liens" subject to state court litigation. Suggesting that such a controversy does not belong in bankruptcy court is simply errant.

Using the same *Kaiser Group* factors urged by the Plaintiff, the first question is "the effect on the efficient administration of the bankruptcy estate." As noted *passim*, allowing a creditor to seek to foreclose a lien, of which an asset was sold expressly free and clear, would work untold violence upon the efficient administration of not just this bankruptcy estate but, too, just about every bankruptcy estate looking to hold a Section 363 sale. As observed by one federal appellate court:

> Section 363(m) maximizes the purchase price of assets because without this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation as to who has rights to estate property. We have long recognized the value of finality in judicial sales.

*In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997) (citing *Anheuser–Busch, Inc. v. Miller (In re Stadium Management Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990); *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986); *In re General Insecticide Co.*, 403 F.2d 629, 631 (2d Cir. 1968)).

What YSRTL endeavors instantly is nothing short of a full-frontal attack on that "assurance of finality." Such would not only work palpable prejudice upon the instant estate but, too, would be a sure-fire recipe for ensuring future asset auctions held in this Honorable Court are thinly attended and punctuated by heavily-discounted bids.

Similarly, this is not a case where state law predominates. While the cause of action may arise under state law, the most substantive issues are uniformly ones of federal bankruptcy law: (i)

whether a sale "free and clear of liens" is actually free and clear of liens; (ii) whether tax certificate holders, who acknowledge being on notice of a bankruptcy case (and who are derivatively on notice through the taxing authority from which they purchase such certificates), are bound by the orders entered therein; and (iii) whether a plan is binding upon priority claimants. These may not be difficult issues (as expounded upon in Waterloo's motion to dismiss) but they are, no doubt, the issues that will predominate herein. This is not a case about whether Adams 3 timely paid real estate taxes; this is a case about whether a bankruptcy court order can be willfully disobeyed by a tax certificate purchaser.

Vis a vis the third factor, there do not appear to be any difficult, or unsettled, issues of state law. YSRTL asserts this case presents "difficult questions" with which the Superior Court is "quite familiar." Motion at p. 8. Putting aside the innate tension in those two notions, it is genuinely unclear what difficult state law issues arise herein, and YSRTL has certainly not explained any such complexities in its papers.

Comity does not favor abstention, either. The fundamental question herein is whether orders of this Honorable Court – entered before this suit was even commenced – ought to be obeyed. Comity no doubt dictates permitting this Honorable Court to enforce its own orders.

The fifth factor is "the degree of relatedness or remoteness to the proceeding in the main bankruptcy court." This is a case where the properties sold to Waterloo were, far and away, the Debtor's largest assets[1] and where, in turn, the proceeds of that sale funded nearly the whole of the distribution to creditors. The terms of that sale are, accordingly, quite intimately related to this proceeding.

---

[1] It bears notation that YSRTL only acquired the tax certificates on two of the three real estate assets. Waterloo does not mean to suggest all three assets are implicated instantly.

As for the existence of a right to trial by jury, there is no such right in this case which, in turn, supports the retention of this case in this Honorable Court. YSRTL argues this factor "is inapplicable." Motion at p. 8. This contention of the Plaintiff seems to miss the relevance of the subject factor; as noted by the *Kaiser Group* Court: "the procedural ease and, presumably, speed in which Plaintiffs could procure a jury trial in Superior Court weighs in favor of remand…" *In re Kaiser Group Int'l*, 421 B.R. at 17. This is, thusly, a factor that favors remand in cases triable to a jury, as the procedure for having a jury trial in a bankruptcy court is enormously complicated. *Id*. But where, as here, there is no jury demand, and a case is not triable to a jury, such militates in favor of keeping the proceeding in the bankruptcy court.

Finally, YSRTL asserts that it will be prejudiced by being made to proceed in this court, but does not quite explain why such is the case, aside from intimating a comfort and familiarity with the Superior Court. The two court houses are, notably, a few block apart from one another; there cannot, almost by definition, be any geographic prejudice to venturing from Indiana Avenue to Constitution Avenue. And YSRTL is represented by one of the most prolific attorneys in this Honorable Court; there assuredly cannot be any prejudice occasioned by the entity having to conform to the Federal Rules of Bankruptcy Procedure.

The Plaintiff seems to argue that it is being prejudiced because (i) Waterloo "did not use a title company" and "seeks to benefit by not having [to] pay the attorneys' fees it caused [YSRTL] to incur." Yet these arguments do not impact this consideration and are, rather, absolute nonsequitors. Waterloo did not use a title company because a sale free and clear of lines is, as titularly suggested, free and clear of liens; until YSRTL brought this case, it does not appear any pre-petition lienholder, in the vast history of reported bankruptcy opinions, has ever thought to argue such a purchaser can be immediately sued to foreclose a pre-petition lien. And Waterloo

argues it should not have to pay attorneys fees because, again, it is not obligated on the lien from which the assets were sold free and clear. More aptly, though, it is not clear what these issues have to do with YSRTL being "prejudiced." If the Plaintiff means to imply that it is being "prejudiced" by having to confront a motion to dismiss, such a contention speaks volumes to the chutzpah afoot instantly.

## VI.     Conclusion

WHEREFORE, Waterloo Rescue respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: November 30, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Waterloo Rescue*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of November, 2023, a copy of the foregoing was via this Honorable Court's CM/ECF system on all parties registered to receive notice.

/s/ Maurice B. VerStandig
Maurice B. VerStandig