Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Waterloo Rescue, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ADAMS 3, LLC, | ) | Case No. 22-205-ELG |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| YSRTL LLC TES CUSTODIAN, | ) | |
| | ) | Adv. Case No. 23-10033-ELG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WATERLOO RESUCE, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| YSRTL LLC TES CUSTODIAN, | ) | |
| | ) | Adv. Case No. 23-10030-ELG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WATERLOO RESUCE, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

1

Comes now Waterloo Rescue, LLC ("Waterloo Rescue" or the "Defendant"), by and through undersigned counsel, pursuant to Federal Rules of Bankruptcy Procedure 7012 and 7056, and Federal Rules of Civil Procedure 12(b)(1) and 56, and moves this Honorable Court to (i) dismiss the above-captioned actions, as against Waterloo Rescue, or, in the alternative, (ii) to enter summary judgment in favor of Waterloo Rescue in the above-captioned actions, and in support thereof states as follows:

### I.   Introduction

A bankruptcy court's ability to sell assets free and clear of liens is instrumental to the reorganizational process, as potential buyers would be loath to bid on realty and personalty potentially encumbered by the claims of aggrieved creditors. These two cases challenge that ability, with YSRTL LLC TES CUSTODIAN ("YLTC" or the "Plaintiff") asserting a right to foreclose properties purchased by Waterloo Rescue, based on tax liens of which the assets were sold free and clear. The Plaintiff's assertion is fundamentally at odds with governing law and unmoored to any good faith reading of Title 11 of the United States Code (the "Bankruptcy Code"); these cases should be dismissed for lack of subject matter jurisdiction as the claims are necessarily uncolorable as a matter of law. In the alternative, the entry of summary judgment is appropriate.

To be sure, the Plaintiff asserts claims also against Bradley Jones (the "Trustee"), trustee of the bankruptcy estate of Adams 3, LLC (the "Debtor" or "Adams 3"). It very much appears these claims are time barred, are brought by a creditor fully knowledgeable about the underlying bankruptcy but who consciously elected to not appear therein or file a claim (administrative or otherwise) therein, and who now seeks to upend a confirmed plan of reorganization by demanding the payment of fees that only arose because of the creditor's strategic refusal to adhere to the claims filing process. But such is ultimately the Trustee's case to assert (and Waterloo Rescue has every

2

confidence the Trustee will do so more-than-capably); endeavoring to hold Waterloo Rescue liable for the debts of Adams 3 is no different than endeavoring to hold stocking-stuffing parents liable for the debts of Toys R Us.

## II. Standard: Motion to Dismiss

This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1), which allows, "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction…" Fed. R. Civ. P. 12(b)(1).

In construing such a motion, "the Court must accept as true all material facts alleged in the complaint. Only where the defendant raises a factual challenge to the jurisdictional facts in the complaint need the court look beyond plaintiff's allegations." *Asociacion De Reclamantes v. United Mexican States*, 561 F. Supp. 1190, 1191–92 (D.D.C. 1983) (citing *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977); *Airline Pilots Ass'n Int'l v. Northwest Airlines, Inc.*, 444 F.Supp. 1138, 1142 (D.D.C. 1978)). *See also*, *Bailey v. Washington Metro. Area Transit Auth*., 696 F. Supp. 2d 68, 71 (D.D.C. 2010) ("Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. Thus, the court is not limited to the allegations contained in the complaint. When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.) (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal*

*Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### III. Standard: Motion for Summary Judgment

The standard for a motion seeking summary judgment is familiarly set forth in the Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

As noted by the United States District Court for the District of Columbia, of the rule governing summary judgment:

> Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To determine what facts are "material," a court must look to the substantive law on which each claim rests. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.
>
> In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. All evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. However, a nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial." By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Wyoming Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 7 (D.D.C. 2001) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); quoting *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 325).

4

As observed by the United States Court of Appeals for the District of Columbia Circuit, "[a] fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). *See also*, *Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 2004 WL 1043086, at *2 (S.D. N.Y. 2004) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment."); *Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co*., 2021 WL 1921016, at *3 (S.D. Cal. 2021) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.") (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

**IV.  Undisputed Material Facts**

1. The Debtor is the previous owner of the real property located at 2406-2410 18th Street, NW, Washington, DC 20009 (collectively, the "Property"). *See* Deed, attached hereto as Exhibit A.

2. On November 1, 2022, the Debtor filed a petition for Chapter 11 relief in this Honorable Court. *See* DE #1 in the Main Case.

3. Scarcely a month later, a Chapter 11 trustee was appointed to take charge of the Debtor's estate. *See* DE #41 in the Main Case.

4. A secured creditor of the Debtor subsequently proposed a plan of reorganization (the "Plan"), pursuant to which the Property was to be transferred to Waterloo:

> …free and clear of all (i) Liens, mortgages, security interests, conditional sale or other title retention agreements, pledges, claims, judgments, demands, easements, charges, encumbrances, defects, options, rights of first refusal, and restrictions of all kinds and (ii) all debts arising under or out of, in connection with, or in any way

5

> relating to, any acts of the Debtor, claims, rights, including rights of setoff or recoupment, defenses, causes of action (whether at law or in equity), obligations, demands, guarantees, interests and matters of any kind or nature whatsoever that arise prior to closing.

DE #117-1 in the Main Case at § 4.1.1.

5. The foregoing sale was expressly made "pursuant to Section 363 of the Bankruptcy Code." *Id.* at § 4.1.2.

6. In acquiring the Property, the Debtor's estate was paid $4,260,000.00, of which $3,700,000.00 was paid through the forgiveness of debt and $560,000.00 was paid in cash. *Id.* at §§ 1.2(ll); 4.1.3.

7. The high bidder agreed to reimburse the Debtor's estate for any priority tax claims in excess of $400,000.00. *Id.* at § 4.1.4.

8. The Plan was confirmed on July 6, 2023. *See* DE #133 in the Main Case.

9. Shortly after the Plan's confirmation, the Trustee consummated the sale of the Property to Waterloo Rescue, noting $356,542.87 to have been paid in real estate taxes "in connection with the sale." *See* DE #140 in the Main Case.

10. YLTC is the holder of two tax certificates, acquired from the District of Columbia on or about July 22, 2022 – several months *before* the Debtor sought bankruptcy protection – previously secured by the Property. *See* DE #1-1 in Case No. 23-10030-ELG, at p. 5, ¶ 5; DE #1-1 in Case No. 23-10033-ELG, at p. 5, ¶ 5.

11.     YLTC was on notice of the Debtor's bankruptcy at all times relevant, declining to file suit to foreclose its tax certificates in recognition of the automatic stay set forth in Section 362 of Title 11 of the United States. DE #22 at ¶ 8 (with the citation being the same in both cases).[1]

12.     On or about August 30, 2023, after Waterloo Rescue acquired the Property from the Debtor's estate, YLTC filed two suits, in the District of Columbia Superior Court, to foreclose its pre-bankruptcy tax certificate on the Property. *See* DE #1-1 in Case No. 23-10030-ELG; DE #1-1 in Case No. 23-10033-ELG.

13.     Both of these cases have now been removed to this Honorable Court. *See* DE #1 in each Adversary Proceeding.

## V.     Argument: These Matters Should be Dismissed for Lack of Case or Controversy; Alternatively, Summary Judgment is Proper

The liens the Plaintiffs seek to enforce have been extinguished by operation of law and, as such, there is no case or controversy to adjudicate *sub judice*. Permitting suit to continue, when the Plaintiff's security interests have been retired by operation of this Honorable Court's confirmation order, would be to entertain only a matter firmly subsumed in the doctrine of mootness, all the while deterring future asset purchasers from bringing their auction paddles to 333 Constitution Avenue. Whether by dismissal or summary judgment, this duo of cases merits termination.

---

[1] The Plaintiff appears to be engaging in some creative pleading, specifically alleging that it received a title report "on June 26, 2023" and then reviewed the report "at some time thereafter." *Id.* The Plaintiff's counsel, acting on behalf of a client also holding a tax certificate lien on one of the Debtor's assets, filed a proof of claim in the main case on December 7, 2022. If the Plaintiff is suggesting it waited until a few weeks before limitations would run to pull a title report, and then reviewed that report at some indeterminate date thereafter, all while being wholly naïve to the bankruptcy proceeding, such certainly tests the reaches of plausibility. More importantly, though, and as noted *passim*, such is also immaterial to whether the words "free and clear" actually mean "free and clear."

7

When a case is mooted by intervening events, this Honorable Court is deprived of subject matter jurisdiction to further entertain the matter. *See, e.g.*, *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 80 F. Supp. 3d 23, 27 (D.D.C. 2015), aff'd, 639 Fed. Appx. 3 (D.C. Cir. 2016) ("No justiciable controversy is presented when the question sought to be adjudicated has been mooted by subsequent developments. 'Even where the litigation posed a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' 'rights nor have a more-than-speculative chance of affecting them in the future.' '") (citing *Associated Gen'l Contractors of Am. v. City of Columbus*, 172 F.3d 411, 419 (6th Cir.1999); quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)).

Here, the sale of the Property, to Waterloo Rescue, free and clear of liens, served to extinguish those liens and, as such, moot any effort to foreclose those liens. As noted by the United States District Court for the Southern District of New York, in a case decided pursuant to the former Bankruptcy Act:

> The bankruptcy court, within the year from the filing of the liens, took possession of the property, and sold it free and clear of the mechanics' liens, and put the proceeds of sale into the hands of its officers, in place of the estate so disposed of. It did this by virtue of the provisions of the 20th section of the act [of 1867 (14 Stat. 526)]. It thereby foreclosed the liens. It converted into money the property that was subject to the liens, and thereby prevented the lienors from ever taking measures to foreclose the liens. The lienors were not only relieved thereby from any duty to renew or continue their liens within the year, but they had no right to renew or continue a lien against property which the bankruptcy court had sold free from such lien.

*Moran v. Schnugg*, 17 F. Cas. 723, 723 (S.D.N.Y. 1874).

In the modern lexicon of the Bankruptcy Code, a trustee – such as the one *sub judice* – is authorized to "sell property … free and clear of any interest in such property of an entity other than the estate…" 11 U.S.C. § 363(f). (There are various conditions precedent to such a sale;

multiple disjunctive options are applicable in this case, including (i) the Property being sold for a price greater than the debt secured by the liens; and (ii) the Plaintiffs being capable of being compelled to accept a money satisfaction of their claims in a legal or equitable proceeding. *Id.*) *See also* 11 U.S.C. § 1129(b)(2)(A) (permitting a sale free and clear of liens through confirmation of a plan of reorganization).

Indeed, as observed by the United States Court of Appeals for the Second Circuit, the finality of a bankruptcy sale is of vital import to optimizing returns to debtors' estates:

> Section 363(m) maximizes the purchase price of assets because without this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation as to who has rights to estate property. We have long recognized the value of finality in judicial sales.

*In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997) (citing *Anheuser–Busch, Inc. v. Miller (In re Stadium Management Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990); *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986); *In re General Insecticide Co.*, 403 F.2d 629, 631 (2d Cir. 1968)).

There is no dispute but that the sale to Waterloo Rescue, in this case, was free and clear of liens. Nor is there any dispute but that the *in rem* rights of a tax certificate holder constitute a lien. And it is thusly quite apparent, on this plain and incontrovertible record, that the Plaintiff cannot, as a matter of law, foreclose the rights of Waterloo Rescue in the Property.

To be sure, the Plaintiff also asserts claims against the Trustee. It is difficult to seriously credit these assertions, which appear to be rooted – *en toto* – in legal fees and costs incurred as a direct result of the Plaintiff electing to not file a proof of claim and, instead, electing to file a legally frivolous duo of lawsuits. These claims are likely time barred and estopped under a multitude of governing legal theories. But whether or not such claims are colorable – and whether or not they might attach to the proceeds of the sale to Waterloo Rescue – is ultimately of no moment to Waterloo Rescue and is a matter for the Trustee to address. Regardless of how those claims may

be treated, they quite plainly do not affix to the Property. And given that Waterloo Rescue was only liable for the payment of taxes over and above $400,000.00, with such taxes having been ultimately retired in the sum of $356,542.87, it cannot be said that any such claims could conceivably invite liability on the part of Waterloo Rescue.

### VI.     YTLC Cannot Assert Claims on Behalf of the Trustee

The Plaintiff, apparently cognizant of the core issues underlying its claims against Waterloo Rescue, endeavors to act derivatively on behalf of the Trustee, urging that Waterloo Rescue should be made to pay more in taxes (and, in fact, going so far as to seek to unwind a sale made pursuant to a confirmed plan of reorganization). For various reasons, these assertions are unsupported by both law and fact; as noted *supra*, Waterloo Rescue paid the full sum required of it under this Honorable Court's controlling orders. But even if, *arguendo*, the Trustee did have a claim for the payment of excess taxes, such would not be the Plaintiff's to assert.

As a starting point, "[w]hen the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that outside of bankruptcy, they have a right to do so." *In re The 1031 Tax Group, LLC*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008) (quoting *In re Granite Partners, L.P.*, 194 B.R. 318, 325 (Bankr. S.D.N.Y. 1996)).[2] And this is a case where the automatic stay remains in effect, inasmuch as the Debtor has not been afforded a discharge, the case is not closed, and the case has not been dismissed. 11 U.S.C. § 362(c)(2).

Equally, however, this is not a claim YLTC ever would have standing to bring in its own right. If Waterloo Rescue owed tax monies to the Debtor's estate (and Waterloo Rescue does not), such would be a claim uniquely and peculiarly belonging to the Trustee, as the estate's

---

[2] It appears the *1031 Tax Group* Court slightly misquoted the *Granite Partners* Court, changing a word and omitting a few words without indicating such. The alterations are immaterial to the argument set forth herein.

representative. 11 U.S.C. § 323. But YLTC – having not suffered any injury-in-fact traceable to Waterloo Rescue's alleged failure to pay the Trustee – would lack direct standing to bring such a claim. *See, e.g.*, *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("To establish standing, Plaintiffs 'must state a plausible claim that [they have] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits.'") (quoting *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)).

The nuance of this point is important: Waterloo Rescue and YTLC are legal strangers. Waterloo Rescue purchased the Property free and clear of liens; by definition, Waterloo Rescue did not assume an obligation to any third parties – it merely agreed to pay the Trustee for the Property. *If* the Trustee owes YTLC money for legal fees YTLC chose to gin up on a facially-suspect claim, such is between the Trustee and YTLC. That YTLC believes Waterloo Rescue may, in turn, owe those monies to the Trustee is immaterial. A lender owed missed payments on a home mortgage cannot sue a borrower's employer for wrongful termination any more than YTLC can sue Waterloo Rescue in this case.

To be sure, there are other issues here. As noted *supra*, the claim against the Trustee is almost assuredly time barred both by the claims deadlines in this case and by the application of Section 108 of Title 11 of the United States Code and Federal Rule of Civil Procedure 15(c). Equally, the Plaintiff's claim is simply without merit – YTLC is suing to recover legal fees it *chose* to incur, opting to file suit based on bad facts and bad law in lieu of filing a proof of claim premised upon good facts and good law. But these are ultimately the Trustee's arguments to make, just as any claim based on a failure to pay under the plan would, too, belong to the Trustee – and only the Trustee.

### VII. Conclusion

WHEREFORE, Waterloo Rescue respectfully prays this Honorable Court (i) dismiss these two cases, as against Waterloo Rescue, for lack of subject matter jurisdiction; (ii) alternatively, enter summary judgment, in each case, in favor of Waterloo Rescue; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 23, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Waterloo Rescue*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2024, a copy of the foregoing was served on all parties through this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig