Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 785-9100
Fax (202) 572-9943
brad.jones@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com
*Counsel for*
*Bradley D. Jones, Trustee*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re: | |
| | Case No. 22-00205-ELG |
| ADAMS 3, LLC, | Chapter 11 |
| Debtor. | |
| | |
| YSRTL LLC TES CUSTODIAN | |
| Plaintiff, | |
| v. | Adv. Pro. No. 23-10030-ELG |
| WATERLOO RESCUE, LLC, *et al.* | |
| Defendants. | |
| | |
| YSRTL LLC TES CUSTODIAN | |
| Plaintiff, | |
| v. | Adv. Pro. No. 23-10033-ELG |
| WATERLOO RESCUE, LLC, *et al.* | |
| Defendants. | |

## **TRUSTEE'S MOTION TO DISMISS AMENDED COMPLAINTS**

The ability to sell and transfer real estate free and clear of liens, claims, and encumbrances is a fundamental feature of American bankruptcy law. This Court entered an order and confirmed a chapter 11 plan that transferred a valuable piece of real property free and clear of liens, claims, and encumbrances to a purchaser in exchange for $4.26 million.

These adversary proceedings are a collateral attack on the sale motion and plan. The suits are brought by a creditor that did not file a proof of claim in the bankruptcy, but instead chose to violate the automatic stay by posting pre-litigation notices on the Debtor's property. Plaintiff then ran up collection costs by filing two lawsuits against the Court-approved purchaser, in reliance on those posted notices, despite this Court approving a free and clear sale. Plaintiff now seeks to extort the bankruptcy estate and/or the purchaser by seeking title to property worth approximately 1,000 times the attorney's fees and costs at issue (Count I). In the event the Court rejects that relief, the creditor seeks a monetary judgment (Count II).

Both claims should be rejected. Under D.C. Law, the bankruptcy estate as a former property owner has no right to redeem real estate that it does not own. D.C. Law also does not allow a tax certificate holder to sue a former owner for money damages. In fact, the Office of Tax & Revenue specifically instructs tax certificate holders not to file a lawsuit if they discover a property is in bankruptcy when they perform a title search—as occurred here. The Bankruptcy Code bars creditors from profiting from acts taken in violation of the automatic stay, preserves free and clear sales to innocent purchasers, and allows trustees to avoid unrecorded prepetition interests. Moreover, under the circumstances of this case, Plaintiff's foreclosure remedy would constitute an unconstitutional taking and an excessive fine under the Fifth and Eighth Amendments of the United States Constitution. Because the Complaints on their face fail to state a claim for which relief may be granted, the Complaints should be dismissed with prejudice.

## Factual Background[1]

1.      The plaintiff in these adversary proceedings is YSRTL LLC TES CUSTODIAN ("YSRTL" or the "Plaintiff"). Complaint ¶6. YSRTL is a tax lien certificate investor who allegedly purchased a tax lien certificate from the D.C. Government in a tax sale auction on July 22, 2022. Complaint ¶6.

2.      Approximately three months after the alleged tax sale auction, Adams 3, LLC (the "Debtor") filed a voluntary chapter 11 petition and commencing bankruptcy case number 22-00205-ELG ("Bankruptcy Case"). Complaint ¶9; [Bankr. Dkt. No. 1].

3.      The Debtor is a single-asset real estate entity as defined by 11 U.S.C. § 101(51B). [Bankr. Dkt. No. 25].

4.      On December 19, 2022, the United States Trustee appointed Bradley D. Jones (the "Trustee") as chapter 11 trustee for the Debtor's bankruptcy estate ("Bankruptcy Estate"). Complaint ¶10; [Bankr. Dkt. No. 42]. The Court entered an order approving such appointment on December 20, 2022 [Bankr. Dkt. No. 45].

5.      At the time the bankruptcy case was filed, the Debtor was the fee simple owner of real properties located in the Adams Morgan section of the District of Columbia commonly referred to as 2406 18th Street, NW, Washington, D.C. 20009; 2408 18th Street, NW, Washington,

---

[1] Citations to documents from the main bankruptcy case will be referred to as "Bankr Dkt. No. XX" and claims filed on the Claims Register of that case will be cited as "Claim XX". Citations to documents from the docket for Adv. Pro. No. 23-10030-ELG, will be referred to as "Adv. 23-10030 Dkt. No. XX." Citations to documents cited from the docket for Adv. Pro. No. 23-10033-ELG, will be referred to as "Adv. 23-10033 Dkt. No. XX."

Plaintiff filed Amended Complaints at [Adv. 23-10030 Dkt. No. 22] and [Adv. 23-10033 Dkt. No. 22]. The two Amended Complaints allege essentially the same facts but the complaint filed in Adv. 23-10030 is more detailed and appears to reflect the most recent version. Unless otherwise indicated, the Trustee will reference Plaintiff's factual allegations by reference to the document filed at [Adv. 23-10030 Dkt. No. 22], which will be cited as "Complaint ¶XX."

D.C. 20009; and 2410 18th Street, NW, Washington, D.C. 20009, and hereinafter collectively referred to as the "Property."

6.      A variety of claims were filed against the Bankruptcy Estate. One of these claims, Claim 2-1, was a proof of claim filed on December 7, 2022 and signed by an attorney Seth Slomovitz of the Law Office of Eric Howell Sayles, PLLC. The claim was filed on behalf of ATCF II DC, LLC, which was the purported holder of a D.C. real property tax lien certificate of sale. [Claim 2-1]. No other tax lien certificate holders asserted claims against the Bankruptcy Estate.

7.      The Trustee hired a real estate agent and aggressively marketed the Real Property for sale. A sale offer was obtained, and on April 4, 2023, the Trustee filed a motion to sell the Real Property free and clear of all liens, claims, and encumbrances (the "Sale Motion"). [Bankr. Dkt. No. 85].

8.      The Sale Motion noted that a title search had identified a Notice of Lis Pendens had been recorded related to a purported tax lien complaint. [Bankr. Dkt. No. 85 at 13]. This lis pendens related to the tax certificate claim of ATCF II DC, LLC. The Sale Motion explained the proposed sale would be free and clear of the Lis Pendens related to the tax lien complaint because "no final order has been entered in the litigation referenced in the Lis Pendens, that litigation was stayed, and the Lis Pendens is in bona fide dispute." [Bankr. Dkt. No. 85 at 16, ¶e].

9.      The title search conducted by the Trustee did not identify a recorded interest in favor of YSRTL. [Bankr. Dkt. No. 158–3].

10.      An in-court auction was held on May 10, 2023, which was won by Dashco, Inc. ("Dashco") with a winning bid of $4,260,000.00.

11.      Unbeknownst to the Trustee, on May 23, 2023 YSTRL caused certain Post-Sale Notices to be posted on the Property by taping the notices to the doors of certain commercial

tenants of the Property. [Adv. 23-10030 Dkt. No. 1-1 at 14–17]; [Adv. 23-10033 Dkt. No. 1-1 at 13–16]. The automatic stay was in effect when these notices were posted and the posting of the notices was an act taken in violation of the automatic stay.

12.     On June 6, 2023, this Court entered an order approving the results of the auction and the sale of the Property free and clear of liens, claims, and interests. [Bankr. Dkt. No. 116]. The sale was to close pursuant to the terms of a chapter 11 plan.

13.     A Disclosure Statement (the "Disclosure Statement") and Chapter 11 Plan of Reorganization of Adams 3, LLC (the "Plan") was proposed by Dashco on June 9, 2023. [Bankr. Dkt. Nos. 117; 117-1].

14.     A copy of the Disclosure Statement and Plan was served on all creditors and parties-in-interest. [Bankr. Dkt. No. 125].

15.     The Plan was confirmed by this Court in a July 6, 2023 Order Approving Disclosure Statement and Confirming Chapter 11 Plan of Reorganization of Adams 3, LLC Proposed by Dashco, Inc. [Bankr. Dkt. No. 133] (the "Confirmation Order").

16.     Under the Plan, the Trustee would receive $560,000.00 from Dashco. [Bankr. Dkt. No. 117-1, ¶4.1.3]. Up to $400,000.00 of those funds would be used to pay allowed tax claims of governmental units with the remaining funds used to pay administrative claims. [Bankr. Dkt. No. 117-1, ¶2.1].

17.     The payments provided under the Plan to claim holders constituted "a full satisfaction, discharge, and release of those claims." [Bankr. Dkt. No. 117-1, ¶2.4].

18.     The Plan provided for an administrative claims bar date, which was defined as the "first business day next exceeding the thirtieth calendar day following the Confirmation Date." [Bankr. Dkt. No. 117-1, ¶1.2(b)].

19.     The Plan was confirmed by an order entered by this Court on July 6, 2023 (the "Confirmation Order"). [Bankr. Dkt. No. 133].

20.     Approximately two weeks after the entry of the Confirmation Order, on July 19, 2023, the District of Columbia Office of Tax and Revenue (the "Office of Tax & Revenue" or "OTR") amended its proof of claim to set forth the secured tax claim asserted by the D.C. Government (the "Secured Tax Claim") with respect to the Real Property. [Claim 4-2].

21.     The Secured Tax Claim was signed by Eugenia Williams, a Revenue Officer for OTR, under penalty of perjury. [Claim 4-2 at 3].

22.     The filing of the Secured Tax Claim constituted *prima facie* evidence of the *amount* and validity of the D.C. Government's secured claim for real property taxes. *See* Fed. R. Bankr. P. 7001(f) (emphasis added).

23.     On July 25, 2023—six days after OTR filed its Secured Claim—the sale of the Real Property closed pursuant to the terms of the Plan. *See* [Bankr. Dkt. No. 117-1, ¶4.1.1] (requiring the sale to close within three days after the Effective Date of the Plan). Dashco took title to the Real Property through its assignee, Waterloo Rescue, LLC ("Waterloo Rescue"). [Bankr. Dkt. No. 140-1].

24.     At closing, the Trustee paid the $356,542.87 owed for D.C. real estate taxes, which was the fully amount of the allowed claim of OTR pursuant to the Secured Tax Claim.

25.     The payment by the Trustee to OTR was a "payment" or "distribution" afforded to a holder of an allowed claim and, pursuant to the Plan, constituted the "a full satisfaction, discharge, and release of [that] claims." [Bankr. Dkt. No. 117-1, ¶2.4].

26.     On August 2, 2023, the sale of the Real Property closed with the recording of a Trustee's Deed by Waterloo Rescue, LLC. *See* [Bankr. Dkt. No. 140]. As of the recording of the

Deed, the Bankruptcy Estate ceased to own the Property. Instead the Property became owned by Waterloo Rescue.

27.     On August 9, 2023, the Trustee filed his Report of Sale, which contained a copy of the recorded Trustee's Deed transferring the real Property to Waterloo Rescue. [Bankr. Dkt. No. 140-1].

28.     The administrative claims bar date expired on August 7, 2023.

29.     On August 29, 2023, the Trustee filed a Notice of Intent to Distribute. [Bankr. Dkt. No. 149]. The Notice of Intent to Distribute disclosed that the Trustee intended to distribute a total of $250,000.00 and provided notice and an opportunity for all parties-in-interest to object to the Trustee's proposed distribution.

30.     No party objected to the proposed distribution and the Trustee completed this distribution on September 6, 2023.

31.     Following the sale and the distribution of most of the assets of the Bankruptcy Estate, two complaints were filed in D.C. Superior Court against Waterloo Rescue by YSRTL (the "Complaints").

32.     The Complaints were originally filed against Waterloo Rescue and the District of Columbia and sought to foreclose any right of redemption in the Property under Chapter 13A of the Code of the District of Columbia. [Adv. Proc. 23-10030, Dkt. No. 1-1; Adv. Proc. 23-10033, Dkt. No. 1-1].

33.     After the Complaints were filed, Waterloo Rescue removed the cases to this Court, with YSRTL subsequently amended the Complaints to add the Trustee, in his capacity as Trustee, as a defendant. [Adv. 23-10030 Dkt. Nos. 1, 22]; [Adv. 23-10033 Dkt. Nos. 1, 22].

34.     YSRTL claims that the payment in full of OTR's Secured Tax Claim did not fully resolve the property taxes owed with respect to the Property, and that as a result, certain additional property taxes owed to the D.C. Government were not immediately paid upon the closing of the sale of the Property. Complaint ¶16.

35.     However, YSTRL admits that all real property taxes owed to the D.C. Government were brought current by September 7, 2023—approximately seven days after YSRTL filed its Complaints. Complaint ¶16.

36.     YSRTL does not allege that the District of Columbia is currently owed any real property taxes with respect to the Property.

37.     However, YSRTL claims it is owed $4,000.00 in attorney's fees for the filing of its two foreclosure Complaints immediately before the payment of the taxes. [Bankr. Dkt. No. 157, ¶17] (alleging $2,000.00 in attorney's fees for each case it filed).

38.     At the time the Complaints were filed on August 30, 2023, the Real Property was owned by Waterloo Rescue and the Debtor and Bankruptcy Estate had no interest in the real Property.

39.     YSRTL was aware of the Debtor's bankruptcy filing. Complaint ¶8. In addition, the adversary complaints for YSRTL were filed by attorney, Seth Slomovitz of the Law Office of Eric Howell Sayles, PLLC, which was the same attorney that filed a proof of claim on behalf of ATCF II DC, LLC.

40.     YSRTL admits that it could not have filed suit against the Bankruptcy Estate or sought attorney's fees or collection costs due to the automatic stay. Complaint ¶8. However, YSRTL now alleges the Bankruptcy Estate is liable for those costs—despite the automatic stay— in the event YSRTL cannot collect from Waterloo Rescue. Complaint ¶29.

41.     Moreover, on the basis of its disputed $4,000.00 attorney's fees claim, YSRTL seeks to have this Court vest fee simple ownership of the Property in YSRTL and foreclose any contrary ownership or redemption claims, which would result in YSRTL receiving a multimillion dollar windfall. Complaint ¶G–H.

### Statutory Framework

Under D.C. Law, if a property owner fails to pay property taxes owed, the District of Columbia may record a lien on the property. D.C. Code. § 47–1331(a); D.C. Code § 47–4421(a). If the liens remain on the property, OTR may initiate a process that can result in the foreclosure and sale of the property. D.C. Code. § 47–1332(a).

However, like many states, the District has also turned to private parties to assist in the collection of taxes by selling tax certificates. *See* D.C. OFFICE OF TAX & REVENUE, DISTRICT OF COLUMBIA 2023 REAL PROPERTY TAX SALE INFORMATION GUIDE (April 2023) (the "D.C. Tax Sale Guide").[2] In these sales, investors bid for the right to purchase tax certificates, which following the following of a foreclosure action either provide the investor with fee simple ownership of the property or a return on their investment with interest if the property is redeemed. D.C. TAX SALE GUIDE, QUESTION 38. Because the interest rates are a punitively high 1.5% per month, investors will often pay significantly more than the outstanding tax debts to acquire a tax certificate in an auction. *See* D.C. TAX SALE GUIDE, Questions 16, 32; D.C. Code § 47-1334(a). The amount the winning investor bids that exceeds the taxes, penalties, interests, and costs owing for taxes is called the "surplus." D.C. Code § 47–1330(7).

The investor who purchases the tax certificate does not receive a property interest nor any right to enter the property. D.C. TAX SALE GUIDE, Question 27. Instead,"[t]he certificate of sale

---

[2] Available at http://tinyurl.com/yuw8ycvd (last accessed Feb. 9, 2024).

entitles the Tax Sale Purchaser to institute legal proceedings to foreclose the right of redemption[.]" D.C. Tax Sale Guide, Question 27. In essence, the tax certificate provides little[3] more than a right to file a lawsuit in D.C. Superior Court.

The object of that suit is to obtain a judgment to foreclose the owner's right to redeem the property. *See* D.C. Code § 47–1348(c); D.C. Code § 47–1370(b). If the investor is successful in that foreclosure suit, the Superior Court can enter a judgment providing three forms of relief. The Superior Court may: (i) foreclose all existing liens and encumbrances to the property; (ii) vest fee simple title to the property in the investor; (iii) or set aside the sale and determine an amount to redeem the property. D.C. Code § 47–1378(b)(1)–(3); D.C. Code § 47–1378. Upon obtaining title, the investor would then be entitled to possession of the real estate. D.C. Code § 47–1383 (allowing for the investor to obtain a writ of possession).

The right to file a foreclosure suit does not provide the tax certificate holder with the lien rights established by OTR's tax lien. The Office of Tax & Revenue remains the lienholder with all the powers to enforce its lien and assess additional taxes against the owner, unless and until the investor obtains a judgment after pursuing its foreclosure suit. *See* D.C. Code § 47–1382(a)(1), (b). Similarly, the owner of a real property subject to a tax certificate sale continues as the record owner of the property with possession and all of the rights and burdens of ownership. D.C. Code § 47–1363(a).

---

[3] There are some other rights provided to the holder of a tax certificate. For instance, the holder of a tax certificate has the option to apply to the Superior Court for the appointment of a receiver. D.C. Code § 47–1363(a). The holder of a tax certificate and any assignee may also record the certificate in Recorder of Deeds. D.C. Code § 47–1350.

To avoid the potential loss of their property, a property owner can "redeem" the property. D.C. Code § 47–1360. A redemption is "the act or an instance of reclaiming or gaining possession by paying a specific price." *Redemption*, Black's Law Dictionary (9th ed. 2009).

In D.C., redemption requires the owner to make a payment to the Mayor of the taxes owed, the amount of the surplus, and interest on taxes. D.C. Code § 47–1361(a). If the tax certificate holder "properly filed" an action to foreclose the right of redemption, the certificate holder can also require attorney's fees to be paid. D.C. Code § 47–1361(6A). But attorney's fees will only be payable if a complaint to foreclose redemption has been filed in Superior Court. D.C. Code § 47–1377(a)(1)(B). A statutory prerequisite to the award of any legal expenses, including attorney's fees, is the compliance with the necessary notice and posting requirements provided by the statute. D.C. Code § 47–1377(d).

The District of Columbia's tax certificate process is unusual in that the District is one of only eleven jurisdictions[4] where proceedings result in a transfer of the taxpayer's entire fee simple ownership of their property—including any surplus equity above the amount owed for taxes ("Confiscatory Tax-Collection Regimes").[5]

The loss of a taxpayer's property, valued well in excess of the amount of the taxes owed, can have significant financial consequences. Over the past decade, at least one hundred twenty one D.C. property owners lost their entire equity position—even though the combined value of the

---

[4] The others are Alabama, Arizona, Colorado, Illinois, Massachusetts, Minnesota, Nebraska, New Jersey, New York, Oregon, and South Dakota. *See* Pacific Legal Foundation, END HOME EQUITY THEFT: STATE SUMMARIES, Available at http://tinyurl.com/22s2afha (Last Accessed Feb. 9, 2024).

[5] There is a narrow exception to the District's Confiscatory Tax-Collection Regime provided in D.C. Code § 47–1382.01. That section provides for the return of surplus equity to Class 1 properties with five or fewer units that is the principal residence of the record owner.

properties at issue was about four times higher than the amount of the applicable tax debt owed.[6]

Because of these consequences, Confiscatory Tax-Collection Regimes have been criticized as

violating the takings clause and/or the excessive fines clause in the Fifth and Eight Amendments

of the Constitution of the United States. *See e.g.,* Brief for the States of Utah, Arkansas, Kansas,

Kentucky, Louisiana, North Dakota, Texas, and West Virginia as Amicus Curiae, p. 7–8, *Tyler v.*

*Hennepin County*, 589 U.S. 631 (2023) (arguing that the results of Confiscatory Tax-Collection

Regimes "are always unconstitutional and often tragic").[7]

Given the potential equity loss under the District's tax foreclosure process, it is unsurprising

that it is not intended to be pursued once a taxpayer files for bankruptcy protection. Pursuant to

D.C. Code § 47–1366 a tax certificate sale may be cancelled by the Mayor at any time before the

issuance of a final order by the Superior Court to prevent injustice to the owner or a person with

an interest in the real estate. D.C. Code § 47-1366(a). The District recognizes that the filing of a

bankruptcy presents an appropriate circumstance where justice requires the cancelling of a tax

certificate sale. The D.C. Tax Sale Guide provides guidance to investors, instructing that "[i]f a

tax sale buyer discovers incorrect ownership or a bankruptcy filing when he or she obtains the title

report, *the tax sale buyer should not file a lawsuit*." D.C. TAX SALE GUIDE, Question 33 (emphasis

---

[6] The Pacific Legal Foundation identified 121 residential properties that were transferred
through the District's tax foreclosure process during the period between January 1, 2014 and
December 31, 2021. Pacific Legal Foundation, DISTRICT OF COLUMBIA, Available at
http://tinyurl.com/ymbpxkym (Last Accessed Feb. 9, 2024).
    The total value of the lost residential homes was $38.29 million while the property taxes
owed on these homes totaled only $9.2 million. *Id.* Of these, 101 of the lost homes were located
East of the Anacostia River and 20 of the homes lost were located West of the Anacostia River.
*Id.*

[7] Available at http://tinyurl.com/3ksy4xs6 (last accessed Feb. 9, 2024).

added). Instead, the investor "should contact the Office of Tax and Revenue to begin the termination process." D.C. TAX SALE GUIDE, Question 33.[8]

Federal Courts have also recognized that the foreclosure of a redemption right by a tax certificate holder effects a transfer of real property that is avoidable in bankruptcy under the applicable causes of action provided under Chapter 5 of the Bankruptcy Code. *See e.g., Hackler v. Arianna Holdings Company, LLC (In re Hackler)*, 938 F.3d 473, 477 (3d Cir. 2019) (avoiding a tax certificate holder's foreclosure of debtor's redemption right as a preferential transfer).

Pursuant to 11 U.S.C. § 544(a) a trustee or debtor-in-possession can avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a bona fide purchaser of real property. Pursuant to 11 U.S.C. § 549(a)(1) a trustee or debtor-in-possession may avoid any transfer of property of the bankruptcy estate that occurs after the commencement of the case. Transfers avoided under Sections 544 and 549 of the Bankruptcy Code are preserved for the benefit of the estate, permitting the trustee or debtor-in-possession to recover the property transferred, or if the court so orders, the value of such property. 11 U.S.C. § 550(a).

## Causes of Action Asserted in the Complaint

YSRTL's Complaints asserts two causes of action, seeking two main forms of relief: title to the Property or the recovery of monetary damages. YSRTL asserts two claims:

**Count I**:   A transfer of title to the Property under D.C. Law by foreclosing the right of any party with an ownership interest in the Property to redeem the Property.

**Count II**:   A claim for the payment of a monetary damages from various parties should YSRTL not be vested with title, principally on the theory that a payment to YSRTL was required by the chapter 11 Plan or that YSRTL was damaged by an alleged failure of the chapter 11 Trustee or Waterloo Rescue to comply with the Plan.

---

[8] If the sale is terminated, the District will repay the investor the amount the investor would have received if the property had been redeemed. D.C. Code § 47–1366(c).

YSRTL's Complaints intermix the causes of action asserted and the relief being sought. For instance, Count I (foreclosure) includes requests for alternative relief such as monetary damages or a trustee sale resulting in a monetary damage, which are either not available in a proceeding to foreclose a right of redemption or are unavailable given the nature of the property at issue in this proceeding. *Compare* Complaint at ¶E–F (referencing D.C. Code § 47-1382.01, which applies to certain Class I properties that are owner occupies) *with* Complaint at ¶20 (alleging the Property at issue in this case is a Class 2 Commercial property).

This Motion addresses YSRTL's redemption foreclosure theories in seeking dismissal of Count I and YSRTL's prayer for monetary recovery against the Bankruptcy Estate in seeking dismissal of Count II. However, the arguments for dismissing Plaintiff's foreclosure and monetary claims apply to equal force, regardless of whether the relief is purportedly sought under either Counts I or Count II.

**Argument**

Rule 12(b)(6), incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012(b), provides for dismissal of an action for "failure to state a claim upon which relief can be granted." The purpose of a Rule 12(b)(6) motion is "to test the legal sufficiency of the complaint." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir.2003).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The pleading "must 'possess enough heft'—that is, 'factual matter,'" to make the plaintiff's claims "plausible,"

not merely "conceivable." *United States ex rel. Garzione v. PAE Gov't Servs.*, Inc., 164 F. Supp. 3d 806, 811 (E.D. Va. 2016) (citations omitted).

The Court must also consider any "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). "In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (alterations in original and citation omitted).

**1.      Count I Seeking to Foreclose Redemption Rights Fails to State a Cause of Action for which Relief Can be Granted.**

Count I of the Complaint seeks an order from this Court foreclosing the right of redemption of any person having an interest in the Property. Complaint ¶15. By foreclosing the right of the redemption, YSRTL seeks to have this Court "vest[] in the Plaintiff absolute and indefeasible title, one hundred percent fee simple, in and to the real property" and to require Waterloo Rescue to deliver possession of the Property to Plaintiff. Complaint at 9 ¶¶G–H.[9] In short, YSRTL's position is that disputed, unpaid attorney's fees in the amount of approximately $4,000.00, entitle it to be awarded fee simple ownership of an unencumbered property worth $4.26 million.

YSRTL's position is absurd and should be swiftly rejected by this Court. Count I fails to state a claim on multiple independent grounds. Relief is precluded because:

(i)      Plaintiff could not provide the pre-suit notices required before filing suit due to the automatic stay;

---

[9] Plaintiff also references D.C. Code § 47–1382.01 and suggests a trustee be appointed to sell the property. But D.C. Code § 47–1382.01 does not apply. That statutory section only applies to Class 1 property with 5 or fewer units in which the record owner occupied the property "as his or her principal residence when the complaint to foreclose the right of redemption was filed." But the Complaint alleges the Property was a Class 2 Commercial Property. Complaint ¶20.

(ii)    The Property had been sold free and clear of all pre-petition liens, claims, interests and encumbrances on the Property, which includes the foreclosure rights under Plaintiff's tax certificate;

(iii)   Plaintiff cannot foreclose and be vested with fee simple title to the property on account of its disputed attorney fee claim because this remedy is unconstitutional. *See Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 639 (2023) (holding that confiscating more property than was necessary to pay a tax debt effects a "classic taking in which the government directly appropriates private property for its own use").

Because the law does not allow this Court to vest YSRTL with fee simple ownership of a multimillion property to resolve a claim of a few thousand dollars, Count I must be dismissed with prejudice.

a.    <u>YSRTL's Suit Must Be Dismissed as the Required Pre-Suit Notices Were Posted in Violation of the Automatic Stay and Are Thus Void</u>.

Under D.C. Law before a lawsuit seeking to foreclose a right of redemption can be filed, certain notices have to be provided to the property owner. D.C. Code § 47-1353.01. The Notice must be posted at least 45 days before the filing of a complaint. D.C. Code § 47-1353.01(C). YSRTL alleges that it complied with this statutory require. Compliance with the notice and posting requirements are a prerequisite to the award of any legal expenses. D.C. Code § 47–1377(d). This includes attorney's fees, which are the only unpaid amounts YSRTL alleges to be owed. Complaint at ¶16.

Plaintiff alleges to have physically posted a "Post Sale Notice Pursuant to D.C. Code 47-1353.01" on the Property on May 23, 2023. [Adv. 23-10030 Dkt. No. 1-1 at 14–17]; [Adv. 23-10033 Dkt. No. 1-1 at 13–16]. In support the complaints attached photographs with time stamps of May 23, 2023. *Id.*

But the Adams 3, LLC bankruptcy case was filed on November 1, 2022—well before the notices were posted. The automatic stay was in effect on May 23, 2023 and is still in effect now.

*See* 11 U.S.C. § 362(c)(2) (providing the automatic stay continues until the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied). This bankruptcy case has never been closed, dismissed, and a general discharge has neither been granted nor denied.

Taking the allegations in the Complaints at face value, YSRTL took actions to commence process against the Bankruptcy Estate, to obtain possession of Bankruptcy Estate property, and to pursue collection of a pre-petition tax claim while the automatic stay was in effect. *See* Complaint ¶¶ 21, 26.[10] YSRTL alleges it discovered the bankruptcy when they ran a title report. Complaint ¶8. But YSRTL took no action to discontinue its violations of automatic stay, instead choosing to proceed with filing lawsuits in Superior Court—even though the D.C. Tax Sale Guide specifically instructs buyers they "*should not file a lawsuit*" if their title report reveals a bankruptcy filing. D.C. TAX SALE GUIDE, Question 33 (emphasis added).

It is well settled that actions taken in violation of the automatic stay are either voidable or void. *In re HP Bennett, LLC*, No. 21-00249-ELG, 2023 WL 8881858, at *2 (Bankr. D.D.C. Dec. 22, 2023). The posting of legal notices on a debtor's property violates the automatic stay. *In re Gagliardi*, 290 B.R. 808, 815 (Bankr. D. Colo. 2003) (holding that posting of a Notice to Quit in furtherance of an eviction action violates the automatic stay). Similar, any efforts to proceed with foreclosure of a tax lien certificate constitutes a violation of the automatic stay. *See, e.g., In re LaMont*, 487 B.R. 488, 497 (N.D. Ill. 2012) (the automatic stay bars a tax certificate purchaser's

---

[10] Plaintiff alleges that it knew of the bankruptcy case at least as of June 26, 2023. Complaint at ¶8. Moreover, the record is clear that Plaintiff had actual knowledge about the bankruptcy well before that date. Plaintiff's counsel, Seth Paul Slomovitz, filed a proof of claim on behalf of another tax certificate holder on December 7, 2022. So Plaintiff through its counsel had actual knowledge of the Adams 3, LLC bankruptcy at least as of that date—well before the May 23, 2023 notices were posted at the property.

attempt to enforce its lien); *In re Faitalia*, 561 B.R. 767, 774 (B.A.P. 9th Cir. 2016) (foreclosure of tax lien after commencement of bankruptcy case violates Sections 362(a)(1), (4), and (6)).

Because the notices posted on May 23, 2023 were void, YSRTL failed to comply with the notice requirements in D.C. Code § 47-1353.01(c), which must be met prior to filing suit. D.C. Law requires strict compliance with the tax sale statute and notice requirements in order to validly convey property and to guard against deprivation of property without due process of law. *See Boddie v. Robinson*, 430 A.2d 519, 521–22 (D.C.1981); *Potomac Bldg. Corp. v. Karkenny*, 364 A.2d 809, 812 (D.C. 1976).

Since Plaintiff's pre-suit notices were void, this case must be dismissed. This failure is also fatal to Plaintiff's claim for attorney's fees. D.C. Code § 47–1377(d). Plus, any award of attorney's fees for filing the Complaint would be objectively unreasonable because the Office of Tax & Revenue instructs buyers in YSRTL's position to contact OTR to begin the termination process and not to file suit. D.C. TAX SALE GUIDE, Question 33.

Awarding title to the Property or attorney fees to YSRTL as a result of its choice to violate the automatic stay would be contrary to the Bankruptcy Code, D.C. Law, and the published instructions provided to tax certificate buyers by OTR. Plaintiff's suit should be dismissed.

      b.    <u>YSRTL Cannot Recover Title to the Property Because the Real Estate Was Sold Free and Clear</u>.

The Bankruptcy Code provides that the "trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate," if at least one of five specified conditions is satisfied. 11 U.S.C. § 363(f). A sale of assets under 11 U.S.C. § 363 is final as to the entire world, including those who were not parties to the sale. *Gekas v. Pipin (In re Met–L–Wood Corp.)*, 861 F.2d 1012, 1017 (7th Cir. 1998); *In re Clinton St. Food Corp.*, 254 B.R. 523, 531 (Bankr. S.D.N.Y. 2000). Therefore, after a valid sale of assets, the

bankruptcy court loses jurisdiction over the assets. *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990).

Finality is important in bankruptcy sales. "Unless bankruptcy sales are final when made, rather than subject to being ripped open years later, high prices will not be offered for the assets of bankrupt firms[.]" *Met-L-Wood Corp.*, 861 F.2d at 1019. For this reason, the Bankruptcy Code protects sales to ensure Court approved sales are not subject to collateral attack later. *See Lemco Gypsum, Inc.*, 910 F.2d at 788 (holding that the terms of bankruptcy sales are "inviolate in the absence of fraud or collusion").

YSRTL's Complaints makes no allegations of fraud or collusion. Its efforts to gain title to the Property are exactly the sort of collateral attacks on final sale orders barred by the Bankruptcy Code. Here, this Court entered a valid sale order and approved a conveyance of real property through a confirmed chapter 11 plan. Section 363(m) prohibits efforts to set aside bankruptcy sales from good faith purchasers unless a stay pending appeal was obtained. Similarly, 11 U.S.C. § 1144 prohibits efforts to revoke confirmation of a chapter 11 plan unless the confirmation order was procured by fraud *and* the party in interest seeks revocation before 180 days after the entry of the confirmation order. YSRTL's Complaints provide no basis to set aside these orders and disturb title to the Property.

Moreover, even if YSRTL had asserted its claims at the time of sale, this Court would have correctly authorized the sale free and clear of any interest YSRTL may have had. YSRTL's claims are subject to *bona fide* dispute and subject to a free and clear sale under 11 U.S.C. § 363(f)(4) for three independent reasons: (1) a *bona fide* dispute is clear from the face of the Complaint because YSRTL admits litigation is required to assert its interest, Complaint at ¶15; (2) the Complaint contains no allegation that any pre-petition interest YSRTL had was properly recorded and so the

interest was avoidable by the Trustee pursuant to 11 U.S.C. § 544(a)(3); and (3) the attorney's fees

claims—which are the only unpaid claims asserted in this litigation—are subject to dispute because

they stem from litigation filed in defiance of the automatic stay and contrary to the instructions

provided to tax sale purchasers, *see supra* pp. 16–18.

This Court should deny YSRTL's belated attempt to attack the free and clear sale of the

Property and its efforts to gain a windfall by seeking title to real estate worth far in excess of its

alleged attorney's fees.

c.    <u>YSRTL Cannot Be Awarded Fee Simple Title to the Property in a Manner<br>Consistent with the United States Constitution.</u>

Last year, the United States Supreme Court decided *Tyler v. Hennepin County*, 589 U.S.

631 (2023), holding that Minnesota's Confiscatory Tax-Collection Regime was unconstitutional

under the facts alleged in that case. The Court recognized that an owner has a property interest in

the equity of their real estate, *id.* at 639–43, and that the loss of equity surplus over and above the

amount of the debt at issues in violation of the Fifth Amendment of the United States Constitution,

i*d.* at 647–48. Justices Gorsuch and Jackson would also have found the tax-collection scheme may

have constituted an excessive fine that was unconstitutional under the Eighth Amendment. *Id.* at

649–50 (Gorsuch, J. concurring).

Here, Plaintiff's Count I seeks an order from this Court foreclosing any right of redemption

and a declaration that fee simple ownership in a $4.26 million property is vested in YSRTL due to

an approximately $4,000 claim for unpaid attorney's fees. Complaint at ¶¶17, G–H. This request

for relief cannot be reconciled with *Tyler v. Hennepin County*, which squarely provides that fee

simple ownership of real estate cannot be taken from an owner where the equity in the property

exceeds the value of the asserted debt.

Because the United States constitution does not permit the loss of the owner's equity through a foreclosure and a transfer of the Property to YSRTL, Count I should be dismissed with prejudice.

**2.     Count II Seeking Monetary Damages or a Compelled Payment Fails to State a Cause of Action for which Relief Can Be Granted.**

Count II of the Complaint seeks a monetary payment from the Bankruptcy Estate on a theory that such payment was compelled by the Plan or is necessary to compensate YSRTL for some harm allegedly caused by the Plan.

D.C. Law does not provide monetary recovery to tax certificate holders except as provided by statute. A tax certificate purchaser "buys under the rule of caveat emptor" and receives "nothing unless he got the land itself." *Associated Ests., LLC v. Caldwell*, 779 A.2d 939, 945–46 (D.C. 2001) (noting that the District of Columbia follows the common law rule). For Plaintiff to obtain a recovery, it must either: (1) identify a valid cause of action under D.C. Law entitling it to monetary relief, which would not be a general or administrative claim[11] in the bankruptcy case; or (2) establish a right to payment under the Debtor's chapter 11 plan.

Plaintiff cannot do so, and Count II fails to state a claim on multiple independent grounds. Relief against the Bankruptcy Estate is precluded because:

(i)     D.C. Law does not provide YSRTL with a right of monetary recovery against a former owner of the Property;

(ii)    The chapter 11 Trustee complied with the terms of the confirmed plan and the Plan precludes recovery against the Trustee or Bankruptcy Estate.

(ii)    Any interest the tax certificate buyer may have had is avoidable by the Trustee under 11 U.S.C. § 544.

---

[11] The administrative claims bar date established in the Plan has passed.

Because YSRTL is not entitled to monetary damages under either D.C. law and did not file a claim enabling it to receive payment under the confirmed bankruptcy Plan, YSRTL's efforts to obtain an award for monetary damages should be rejected. Count II must be dismissed with prejudice.

a.    <u>YSRTL Cannot Maintain a Cause of Action for Damages Against the Bankruptcy Estate Under Applicable D.C. Law.</u>

As explained *supra* pp. 16–18, YSRTL has no claim against attorney's fees because YSRTL proceeded in violation of the automatic stay and it is objectively unreasonable to award any fees for a stay violation—particularly where OTR has instructed tax certificate buyers to not file suite. However, regardless of that issue, Plaintiff has no basis to pursue damages against the Bankruptcy Estate under generally applicable non-bankruptcy law. Under D.C. Law tax certificate holder does not obtain a right to seek damages against a property owner. The certificate of sale issued by OTR is merely a right to sue, providing the certificate holder a right to sue to foreclose a right of redemption and take title to the real estate. *See* D.C. TAX SALE GUIDE, Question 27.

Here, the Bankruptcy Estate has sold the property by trustee's deed, essentially quit claiming the property to Waterloo Rescue. Complaint at ¶¶13–14, 18; *See also* [Bankr. Dkt. No. 140-1] (conveying all of the Bankruptcy Estate's interest in the Property by special warranty of title). The Bankruptcy Estate is a former owner of the property with no entitlement to ownership. There is thus no property interest in the real estate for the Bankruptcy Estate to redeem.

Nothing in D.C. Law compels a party to redeem property that it does not own, is not entitled to, or has no value to it. A former owner is not a proper party to an action by a tax certificate holder to foreclose a right of redemption. Under D.C. Code the defendants in an action to foreclose a right of redemption are: (1) the record title owner of the property; (2) the legal title holder, if different from the record holder; (3) any recorded life tenant; (4) any remainder interest holder of a life

tenant or ground lessee with a rent term of at least 30 years; (5) the trustee under a recorded deed of trust; and/or (6) the District. D.C. Code § 47–1371(b)(1)(A)–(G).

None of the proper Defendants in an action to foreclose a right of redemption include a former owner with no remaining interest in the property. This is because a former owner has no legal right or interest in the redemption of real estate that belongs to someone else. Because D.C. Law does not provide a damages remedy to the former owner, they are not a proper party.

Similarly, the Bankruptcy Code does not require the Bankruptcy Estate to be burdened by or execute a right to redeem property the estate does not own. Under 11 U.S.C. § 554(a), the trustee is entitled to abandon property that is burdensome to the estate or that is of inconsequential value and benefit to the estate. Even if the Bankruptcy Estate had a continued interest in the Property or a redemption right, unless the exercise of that right would result in the recovery of assets that could be distributed to creditors, the Trustee would not and cannot be compelled to exercise that right under the Bankruptcy Code.

Because the Bankruptcy Estate as a former owner cannot be compelled under either D.C. Law or the Bankruptcy Code to redeem property the Estate does not own, YSRTL cannot state a cause of action to compel the Trustee to pay money to redeem the Property. Count II should be dismissed.

      b.    <u>The Trustee Has Completed the Obligations Under the Plan, Which Do Not Provide Any Rights to an Unknown Investor Who Bought a Tax Certificate.</u>

YSRTL's Complaints admit that all real estate taxes associated with the Property have been paid. Complaint at ¶¶16–17. The Bankruptcy Estate properly and fully paid any real estate taxes that were owed to the D.C. Government. The Trustee paid the taxes that were owed in accordance with the proof of claim filed for the Secured Tax Claims. Complaint at ¶18. The Trustee was entitled to rely on the proof of claim filed by the D.C. Government to determine the amount of the

secured tax liability. Under the Bankruptcy Rules, a proof of claim constitutes *prima facie* evidence of the amount of the Secured Tax Claim. Fed. R. Bankr. P. 3001(f). A request to challenge or determine the amount of a governmental unit's secured claim may only be made by a motion or claim objection. Fed. R. Bankr. P. 3012(c).

Under the Bankruptcy Rules, all creditors who seek to be paid from the Bankruptcy Estate through a distribution pursuant to a confirmed plan must file proofs of claim, regardless of whether they have a security interest. Fed. R. Bankr. P. 3002(a). A secured creditor who fails to file a proof of claim cannot share in distributions made under a bankruptcy plan. Fed. R. Bankr. P. 3021; *In re Boucek*, 280 B.R. 533, 538 (Bankr. D. Kan. 2002) ("[I]n the absence of a timely proof of claim, a secured creditor does not have an allowed claim and is not entitled to receive distributions or participate in the debtors' plan of reorganization.").

The Plan filed in this case provided for payment of allowed priority tax claims. [Bankr. Dkt. No. 117-1 at ¶2.3]. The Plan defined tax claims as the claims of "a governmental unit," applying the definition from the Bankruptcy Code. *See* [Bankr. Dkt. No. 117-1 at ¶1.2(ii)]. The Plan was also clear that to be eligible for payment the tax claims had to be "an allowed Claim against the Debtor." [Bankr. Dkt. No. 117-1 at ¶2.3]. The payment received under the Plan on account of those tax claims was to be "in full and complete satisfaction, discharge and release of such allowed Claims." [Bankr. Dkt. No. 117-1 at ¶2.4].

The D.C. Office of Tax & Revenue is a governmental unit. OTR filed a proof of claim and, as a result, had an allowed claim. *See* Claim 4-2; Fed. R. Bankr. P. 3002 (providing that a secured creditor must file a proof of claim for the interest to be allowed). YSRTL did not file a motion to determine the amount of OTR's claim or object to the claim before YSRTL filed a lawsuit in D.C. Superior Court, even though this was the proper mechanism under the Bankruptcy Code for a

party-in-interest to determine the amount of a governmental unit's filed proof of claim. *See* Fed. R. Bankr. P. 3012(c). The Trustee acted properly in paying the Government's tax claim in the full amount claimed by OTR, which was the allowed amount of the claim. *See* Complaint at ¶18. This payment resulted in the complete satisfaction, discharge and release of that claim. [Bankr. Dkt. No. 117-1 at ¶2-4].

YSRTL has no claim to a payment under the Plan. It did not file a claim, and is thus, not eligible for distributions. It does not have a priority tax claim as defined in the Plan, and the Bankruptcy Code, because is a private business entity and not a "governmental unit." As a result, YSRTL was not eligible under the Plan to receive any payments under Paragraph 2.3 of the Plan.

Nothing in the Plan obligated the Bankruptcy Estate to make any payments to YSRTL. In fact, the Plan specifically barred such claims. YSRTL's litigation to try to enforce an obligation by the Trustee to pay taxes allegedly owed to the D.C. Government is a derivative claim. But the Plan specifically enjoins such claims. Pursuant to Paragraph 8.1 of the Plan:

> All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

[Bankr. Dkt. No. 117-1, ¶8.1].

This distribution in the full amount asserted by the Government in the claims process fully discharged any obligation owed by the Bankruptcy Estate under the Plan. *See* [Bankr. Dkt. No. 117-1, ¶2.4]. Any attorney's fees YSRTL incurred after the transfer of the property to Waterloo Rescue are not liabilities of the Bankruptcy Estate. As a result, the claims asserted in Count II for a monetary award against the Bankruptcy Estate must be dismissed with prejudice.

c.    <u>To the Extent YSRTL Had Any Interest in the Property, Its Interest is Avoidable</u>.

Under D.C. Law a bona fide purchaser for value generally takes free and clear of unrecorded tax liens. D.C. Code § 47-4423(a). Investors who purchase a tax certificate are entitled to record the certificate of sale with the District of Columbia Recorder of Deeds to protect their interest. D.C. Code § 47-1350. But YSRTL did not do so.

Under the Bankruptcy Code, when a bankruptcy case is filed the Trustee, as of the petition date, has the power to avoid interests in property to the extent the interest could have been avoided by a bona fide purchaser for value under applicable state law. 11 U.S.C. § 544(b)(3). Pursuant to Section 544, the Trustee stands in the position of a hypothetical bona fide purchaser, with the Trustee essentially being "deemed to have conducted a title search of the property, paid value for the property, and perfected his/her interest as of the date of commencement of the case." *In re Howard*, 422 B.R. 568, 577 (Bankr. W.D. Pa. 2009) (citing *In re Speer*, 328 B.R. 699, 703 (Bankr.W.D.Pa.2005); *In re Sosnowski*, 314 B.R. 23 (Bankr.D.Del.2004)). This provides a trustee with the ability to avoid unrecorded interests affecting title to real property. *See e.g., In re Garrido Jimenez*, 370 B.R. 878, 881 (B.A.P. 1st Cir. 2007) (holding an "unrecorded interest was not effective against the Trustee as a hypothetical bona fide purchaser" and was "avoidable by a trustee pursuant to 11 U.S.C. § 544(a)(3)").

YSRTL does not appear to allege that its certificates of sale were recorded with the D.C. Recorder of Deeds. In addition, the Exhibits attached to YSRTLs' Complaints include copies of the certificates of sale at issue. [Adv. 23-10030, Dkt. No. 1-1 at 12]; [Adv. 23-10033, Dkt. No. 1-1 at 12]. Both certificates contain a box for YSRTL to place a return address with the instruction: "when submitting to the Recorder of Deeds, enter return address above." [Adv. 23-10030, Dkt. No. 1-1 at 12]; [Adv. 23-10033, Dkt. No. 1-1 at 12]. However, this box is left blank in both

certificates. [Adv. 23-10030, Dkt. No. 1-1 at 12]; [Adv. 23-10033, Dkt. No. 1-1 at 12]. The Trustee

obtained a title report before selling the Property. *See* [Bankr. Dkt. No. 158-3]. That title report

did not return any record of a recorded certificate of sale in favor of YSRTL on record with the

Recorder of Deeds. [Bankr. Dkt. No. 158-3]. As a result, any lien rights YSRTL may have had due

to the certificates of sale are subject to avoidance by the Trustee with the value, if any, of those

liens preserved for the benefit of the Bankruptcy Estate. 11 U.S.C. § 550.

Moreover, YSRTLs' efforts to foreclose on the Property would also effectuate an additional

transfer that would separately be avoidable by the Trustee. The term "transfer" has a broad meaning

under the Code, specifically including the "the foreclosure of a debtor's equity of redemption." 11

U.S.C. § 101(54)(C). A foreclosure of a redemption interest is a transfer that is subject to a

Trustee's avoidance powers. *Hackler*, 938 F.3d at 477–48 (avoiding a transfer as a preference under

Section 547); *In re Heidt*, 656 B.R. 10 (Bankr. D.N.J. 2023) (setting aside a tax lien foreclosure as

a transfer for less than reasonably equivalent value under Section 548 and collecting cases).

To the extent any redemption right of the Bankruptcy Estate was foreclosed within two

years of the petition date, that foreclosure would be a transfer avoidable by the Bankruptcy Estate

pursuant to 11 U.S.C. § 548. Similarly, to the extent any right of redemption the Estate has is

foreclosed post-petition by this Court or the Superior Court, that foreclosure would be a transfer

avoidable by the Trustee pursuant to 11 U.S.C. § 549.

In either case, the Bankruptcy Estate's ability to avoid the redemption right means that

YSRTL would not have a right to a monetary payment from the Bankruptcy Estate as a secured

creditor. At most, YSRTL would have a right to file a general unsecured claim under 11 USC

§ 502(d) on account of its avoided certificate of sale or redemption right (assuming the certificate

of sale even provides a right to monetary recover from the Bankruptcy Estate, which the Trustee disputes, *see supra* pp. 16–18, 22–23).

Because YSRTL has no right to a monetary recovery from the Bankruptcy Estate, Count II must be dismissed with prejudice.

### Conclusion

WHEREFORE, Bradley D. Jones, Trustee, respectfully requests that this Court dismiss Counts I and Counts II against the chapter 11 Trustee and the Bankruptcy Estate of Adams 3, LLC with prejudice.

Dated: February 9, 2024                    Respectfully submitted,

*/s/ Bradley D. Jones*
Bradley D. Jones, No. VA 68
Joshua W. Cox, No. 1033283
Ruiqiao Wen, No. 1743500
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 785-9100
Fax (202) 572-9943
brad.jones@stinson.com
joshua.cox@stinson.com
ruiqiao.wen@stinson.com
*Counsel for*
*Bradley D. Jones, Trustee*

CORE/3529461.0002/186967431.1

### CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on February 9, 2024, electronically via the Court's ECF system.

*/s/ Bradley D. Jones*
Bradley D. Jones