**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>ADAMS 3, LLC<br><br>　　　Debtor. | Case No. 22-00205-ELG<br>Chapter 11 |
| YSRTL LLC TES CUSTODIAN<br><br>　　　Plaintiff<br><br>　　　　　vs.<br><br>WATERLOO RESCUE, LLC<br><br>　　　Defendant | Adv. Proc. No. 23-10030-ELG |
| YSRTL LLC TES CUSTODIAN<br><br>　　　Plaintiff<br><br>　　　　　vs.<br><br>WATERLOO RESCUE, LLC<br><br>　　　Defendant | Adv. Proc. No. 23-10033-ELG |

**OPPOSITION TO MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

YSRTL LLC TES CUSTODIAN ("YSRTL"), by and through its undersigned counsel,

responds to the *Motion To Dismiss Or, In The Alternative, For Summary Judgment* (the "Motion to

_____
MCNAMEE HOSEA, P.A.
Justin P. Fasano, Esquire (DCB # MD21201)
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
Phone: 301-441-2420
jfasano@mhlawyers.com

*Counsel to YSRTL LLC TES CUSTODIAN*

Dismiss") filed by Waterloo Rescue, LLC (hereinafter referred to as "Waterloo"), and in support thereof, states as follows:

**RULE 7008 STATEMENT**

YSRTL does not consent to entry of final orders or judgments by the Bankruptcy Court.

**INTRODUCTION**

Waterloo essentially argues that its violation of its own Chapter 11 plan creates a new form of foreclosure that extinguishes the lien of a senior lienholder. Waterloo, through its predecessor, Dashco, proposed a plan that required Dashco to pay all real estate taxes owed over $400,000 on certain real property at closing. Dashco did not serve the plan on YSRTL or its counsel, despite YSRTL having a recorded interest in the Property. Dashco did not comply with its own Chapter 11 plan and did not pay all of the taxes owed over $400,000 at closing. Now, Dashco objects to having to pay the attorneys fees incurred in connection with the collection of those taxes, and seeks to dismiss a complaint to redeem a tax sale certificate that would cause YSRTL to forfeit over $400,000. Dashco's proposal violates constitutional requirements of due process, its own plan approved by this Court, and District of Columbia law regarding the priority of real estate tax liens and redemption of tax sale certificates. The Complaint should not be dismissed, it should be remanded to the District of Columbia Superior Court, and allowed to proceed.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. Adams 3, LLC (the "Debtor") is the previous owner of the real property located at 2406-2410 18th Street, NW, Washington, DC 20009 (collectively, the "Property").

2. Movant is the holder of tax certificates for two of the three parcels which comprise the Property, acquired from the District of Columbia on or about July 22, 2022. See DE #1-1 in Case No. 23-10030-ELG, at p. 5, ¶ 5; DE #1- 1 in Case No. 23-10033-ELG, at p. 5, ¶ 5.

2

3. On November 1, 2022, the Debtor filed a petition for Chapter 11 relief in this Honorable Court. See DE #1 in the Main Case. The Debtor never listed YSRTL as a creditor and YSRTL did not receive notices in the Debtor's case.

4. Approximately one month later, a Chapter 11 trustee was appointed to take charge of the Debtor's estate. See DE #41 in the Main Case.

5. Dashco, Inc., a secured creditor of the Debtor, subsequently proposed a plan of reorganization (the "Plan"), pursuant to which the Property was to be transferred to Waterloo (an entity set up Dashco). DE #117-1 in the Main Case at § 4.1.1.

6. In the Plan, Dashco's successor, Waterloo, as the high bidder, agreed to reimburse the Debtor's estate for any priority tax claims in excess of $400,000.00. Id. at § 4.1.4. Specifically, the Plan provided that

> Should the Priority Tax Claims exceed $400,000.00 as of the Confirmation Date, Dashco shall (i) first, have the right to challenge the imposition, calculation, assessment, levying and/or collection of any such taxes, through the initiation of a claim objection or adversary litigation in the Bankruptcy Court, or through such other judicial or quasi-judicial avenues as Dashco may deem fit in its sole and absolute discretion; 9 and (ii) second, within five days of being first apprised of such additional Priority Tax Claims, but not sooner than the fifth day following final resolution of any dispute thereof if such a dispute is initiated within five days of when Dashco is first apprised of such additional Priority Tax Claims, pay to the Chapter 11 Trustee monies equal to the difference between the whole of the Priority Tax Claims and the sum of $400,000.00. For the avoidance of doubt, Dashco shall have no obligation to pay monies to the Chapter 11 Trustee for any taxes attendant to the Real Estate that may accrue or otherwise become due and owing on any date after the date on which the sale provided for in Section 4.1 hereof is closed upon, with any such taxes thereafter being an obligation extraneous to this proceeding

Plan, § 4.1.4.

7. In acquiring the Property, the Debtor's estate was paid $4,260,000.00, of which $3,700,000.00 was paid through the forgiveness of debt and $560,000.00 was to be paid in cash.

8.  On June 6, 2023, this Court entered an order approving the sale of the Property, which stated.

> Dashco agreed that its cash component up to a maximum amount of $400,000.00 would be used to pay accrued real estate taxes, insurance, and any extant liens and utilities applicable to the Properties. *Any other necessary costs to close on the sale of the Properties in amounts above $400,000.00 will be the sole responsibility of Dashco.* Dashco further agreed that the remaining $160,000.00 of its cash component bid will be carved out from the proceeds of its collateral and be used to pay administrative expenses in the amounts to be agreed to by administrative claim holders.

Docket No. 116, ¶ 5 (emphasis added).

9.  Dashco's Plan was confirmed on July 6, 2023. See DE #133 in the Main Case.

10. Shortly after the Plan's confirmation, the trustee consummated the sale of the Property to Waterloo Rescue, noting only $356,542.87 was paid in real estate taxes "in connection with the sale." See DE #140 in the Main Case.

11. The amount the Trustee paid for taxes was based on a stale proof of claim. See Proof of Claim 4-2. Accordingly, the Trustee still owed $68,210.16 in D.C. taxes (the "Tax Shortfall").

12. Movant was not allowed to file suit to foreclose its tax certificates until the Property was sold because of the automatic stay set forth in Section 362 of Title 11 of the United States. Id. at p. 4, n. 1.

14. Movant contacted the Trustee several times before August 30, 2023, including on August 25, 2023 and August 29, 2023, to try to obtain payment of the Tax Shortfall.

15. On or about August 30, 2023, after the stay had ended, and after Waterloo Rescue acquired the Property from the Debtor's estate, Movant filed two suits, in the District of Columbia Superior Court, to foreclose its tax certificates on the Property. See DE #1-1 in Case No. 23-10030-ELG; DE #1-1 in Case No. 23-10033-ELG. Movant was required by District of Columbia to file this suit within one year of issuance of the tax certificates on July 29, 2022, otherwise, it would

4

have forfeited the funds paid to the District of Columbia for the tax certificates, in the aggregate amount of $427,384.33. See D.C. Code § 47-1355("(a) Except as otherwise provided, a certificate of sale shall be void if: (1) An action to foreclose the right of redemption is not brought within one year from the date of the certificate of sale; . . .(b) If a certificate shall become void . . . (2) All monies paid for the real property by the purchaser shall be forfeited to the District . . .". That one year deadline was tolled until 30 days after the properties were no longer subject to the automatic stay pursuant to § 108 of the Bankruptcy Code, requiring the suits to be filed by September 1, 2023 (30 days after constructive notice of the sale was provided pursuant to the recorded Bankruptcy Trustee's Deed).

16.    On September 7, 2023, the Trustee paid the Tax Shortfall. However, the Trustee did not pay the attorneys' fees incurred by the Movant in filing the tax lien cases. Had the Tax Shortfall been paid prior to August 30, 2023, there would be no further payment required to Movant; the fees first came into existence at the time the suits were filed on August 30, 2023 due to the tax underpayment. See D.C. Code 47-1377(a)(1)(B).

17.    Waterloo Rescue has now removed these cases and filed a motion to dismiss and/or for summary judgment. However, Waterloo Rescue refuses to pay the attorneys' fees. Waterloo has claimed $2,000.00 in attorneys' fees for each case it filed, and is entitled to its ongoing attorneys fees. See D.C. Code 47-1377(a)(1)(B).

## **ARGUMENT**

**1) Lack of Notice to YSRTL renders the Confirmation Order ineffective to release YSRTL's lien.**

YSRTL was a known creditor. It had purchased the Debtor's taxes, and had recorded an interest against the Property. It was not provided service of the Plan or the sale motion in this case. Nor was it contacted to determined the amount of real estate taxes due at closing. As a known

5

creditor, it is entitled to notice by mail. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

The case of *In re Metzger*, 346 B.R. 806 (Bankr. N.D. Cal. 2006) is instructive. Metzger can be summarized as follows:

> [T]he Bankruptcy Court had approved a sale free and clear of liens for land that was subject to an affordable housing development restriction imposed by the affected county. The county was not given any formal notice of the hearing at which the sale was approved. The county challenged the sale free and clear of liens, arguing that the court's approval of the sale had no effect on the county's development restriction. The purchaser contended that despite of the lack of formal notice, the county had actual knowledge of the bankruptcy case and had been told that the land was going to be sold free and clear of liens. The purchaser argued the county's actual knowledge of the sale satisfied due process and the county was bound by the order approving it.
>
> After completing discovery and conducting oral argument, the parties presented the due process issue to the court. The court made factual determinations regarding the county's interest and the nature of the county's knowledge regarding the specifics of the sale. The court acknowledged that "[i]n theory, actual knowledge of a hearing may, in some circumstances, be sufficient to satisfy due process concerns." The court held, however, that it was "aware of no case supporting [the] inquiry notice theory in a chapter 11 case involving a sale free and clear of liens." The court concluded that inquiry notice did not exist "in the context of the facts before this Court" and found that the county was not bound by the previous order approving the sale.

*In re Agriprocessors, Inc.*, No. 08-02751, 2010 WL 4342060, at *6 (Bankr. N.D. Iowa Oct. 27, 2010), at *6 (citing and quoting Metzger) (internal citations omitted); *see also In re Le-Nature's Inc.*, No. 06-25454 (MBM), 2010 WL 2573901, at *6 (W.D. Pa. June 23, 2010).

Waterloo may respond that YSRTL knew a plan was filed, but this is of no event. YSRTL has a lien senior in priority to Dashco. There is no way Dascho could have confirmed a plan without paying YSRTL in full. The Plan provides, as it must, that taxes would be paid in full. There was nothing for YSRTL to object to. Dashco cannot underpay a lien under its own plan and then argue that YSRTL should have objected to a plan of which it had no notice.

**2) Dashco/ Waterloo should not benefit from their failure to comply with their own plan**

Dashco agreed in the Plan that all taxes would be paid at closing, and that it would fund taxes in amounts over $400,000 separately. It did not. Now, it seeks the benefit of a 363(f) sale. But compliance with section 363(f) assumes that YSRTL's lien would be paid in full. 11 U.S.C. § 363(f)(1).[1] Dashco never contacted YSRTL to determine the amount of the tax lien. Instead, it appears the Trustee and/or Dashco, for reasons unclear, relied on a stale proof of claim, and underfunded closing in violation of ¶ 4.1.4 of their own plan. It would be quite a feat if Dashco/ Waterloo could (i) propose a plan that requires YSRTL's lien to be paid in full by transferring the Debtor's property to themselves through a credit bid on a lien junior to YSRTL; (ii) fail to serve YSRTL with said plan; (3) not pay YSRTL in full at closing as required under its own plan; and (4) claim they are the innocent beneficiaries of a "free and clear" sale order, thus extinguishing YSRTL's senior lien. The Court should not allow the procedural gymnastics suggested by Waterloo.

**3) YSRTL's remaining lien arose post sale.**

Paragraph 4.1.4 of the Plan provides

For the avoidance of doubt, Dashco shall have no obligation to pay monies to the Chapter 11 Trustee for any taxes attendant to the Real Estate that may accrue or otherwise become due and owing on any date after the date on which the sale provided for in Section 4.1 hereof is closed upon, with any such taxes thereafter being an obligation extraneous to this proceeding.

It cannot be disputed that all fees remaining to be paid to YSRTL were incurred after the sale in this case. Now, however, Waterloo asks that the Court determine a matter, which is, in its own words, "extraneous to the proceeding." In fact, nothing in the

---

[1] No action has been brought by the estate against Dashco to fund the unpaid taxes over $400,000. Counsel for Dashco is the estate representative for liquidating causes of action. Plan, ¶ 4.2.1.

7

Plan extinguishes fees that are part of YSRTL's lien which arose post-closing. They are Waterloo's responsibility and they are subject to enforcement in the Superior Court.

   4) **Waterloo's motion to dismiss inpermissably interferes with the D.C. tax lien enforcement mechanisms and procedure.**

Waterloo speaks to the supposed chilling effect that Plaintiff's enforcement of its super-priority tax lien will have by "deterring future asset purchasers from bringing their auction paddles to 333 Constitution Avenue". However, that ignores the chilling effect that its attempted end-around of the District of Columbia's tax collection laws will have on bidding at the annual District of Columbia tax sale, as purchasing a tax certificate would carry the risk of a complete forfeiture of the amount paid, simply by the trustee conveying title without first ensuring that all taxes due to the District are paid, as occurred here.

By failing to provide due process notice, and by failing to pay the entire outstanding tax liability as required by this Court's June 6, 2023 Order, Dashco, Waterloo, and the Trustee put approximately $450,000 that YSRTL invested in its tax certificates at risk and are now threatening to cause the certificates to become void instead of simply redeeming the properties by payment of the modest amount remaining, which at this point are only certain fees and expenses that first accrued after conveyance of the properties out of the bankruptcy estate. Waterloo attempts to have its cake and eat it too, by obtaining title without complying with the payment conditions ordered by this Court, and then by using the same order that was violated as a shield to argue that they were conveyed title free and clear of Plaintiff's priority lien that they failed to satisfy.

Were the Court to grant Waterloo's motion and provide them an unjust windfall, the effect would be catastrophic as dismissal of a complaint in this manner would impermissibly cause a tax sale purchaser's certificate to become void as it could no longer pursue its claims related to the tax certificates, nor could it be refunded the amounts to which it is entitled under D.C. Code §§ 47-

8

1361, 1377. Such a result would be in violation of D.C. Code § 47-1355, which provides an enumerated list of only five reasons whereby the Certificate shall be void, none of which apply herein. D.C. Code § 47-1355 provides that:

> (a) Except as otherwise provided, a certificate of sale shall be void if:
>
> (1) An action to foreclose the right of redemption is not brought within one year from the date of the certificate of sale;
>
> (2) Repealed;
>
> (3) An action to foreclose the right of redemption is dismissed for a lack of prosecution;
>
> (3)[sic] An action to foreclose the right of redemption is dismissed for lack of prosecution, or a pleading has not been filed by the plaintiff within the later of one year from the last hearing in the case or October 1, 2019.
>
> (4) The purchaser fails to comply with § 47-1382 [which relates to payment of the taxes to the District subsequent to judgment]; or
>
> (5) A sale is set aside because of fraud on the part of the purchaser.

There is no other basis in any other section of the statute that apply herein. In *Rupsha 2007, LLC v. Kellum*, 32 A.3d 402, 406 (D.C. 2011), it was held that a tax certificate may only be declared void based on the enumerated reasons set forth above, which all contemplate wrongdoing on the part of the tax sale purchaser (and which do not apply to the present case). As Waterloo does not allege that the Certificates are void for any of the reasons set forth in § 47-1355 (nor could they in good faith), it would be improper for any action to be taken that would cause the Certificates to become void.

There are four offramps to resolving a tax sale foreclosure under the statute; the certificate may be redeemed under D.C. Code § 47-1361 by payment of all outstanding taxes to under a $100 balance, plus reimbursement of certain legal fees and expenses under § 47-1377 once an action to foreclose the right of redemption is filed; the certificate may become void under § 47-1355, which

9

is not applicable here as is discussed above; the certificate may be cancelled by the Mayor under § 47-1377, which has not occurred[2]; or the certificate may be set aside by the Court under § 47-1380, which also requires that the property be redeemed under § 47-1380(b)(" A sale shall not be set aside unless the real property is redeemed").

Out of those options, redemption is the appropriate course. The taxes due to the District between the three properties that were sold appear to have been greater than $400,000 based on the payments made at the time of the conveyance and the latter payments made subsequent to the filing of these actions[3]. As Dashco/Waterloo were required to pay all taxes above $400,000, they failed to comply with the conditions of the sale and caused Plaintiff to be in a position of having to file these actions to protect the funds paid for the tax certificates, which would have been forfeited to the District had the Complaints not been filed within 30 days of recording the deed. Those filings caused additional amounts to come due, which are extraneous to this proceeding (Plan, § 4.1.4.), and which are the responsibility of Waterloo.

Were the Court herein to determine otherwise, that the property is not required to be redeemed by Waterloo (or by the Trustee per Plaintiff's Motion to Compel Payment (Docket Entry 157)), in lieu of dismissal or summary judgment, it would be more appropriate for YSRTL to be afforded the opportunity to move to set aside the sale and force the District to cancel the certificates under D.C. Code § 47-1380 and pursuant to the opinion set forth the *Rupsha 2007, LLC* matter,

---

[2] The District of Columbia is a defendant to this action; however, it does not appear that it has been served with the Motion.

[3] This includes the taxes owed relating to the third property that was sold to Waterloo that is not subject to a tax certificate by the Plaintiff herein, but which property is subject to a tax lien by another tax sale purchaser (see proof of claim filed by ATCF II DC, LLC).

10

which affords a tax sale purchaser the ability to compel the District to set aside the sale in certain circumstances.

5. **This Court lacks subject matter jurisdiction to hear the Motion to Dismiss.**

Most courts apply the "close nexus" test to determine if a bankruptcy court has "related to" jurisdiction in the post-confirmation setting. *See Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837 (4th Cir. 2007). In this case, Waterloo asks that this Court hear a dispute between two non-debtors that it admitted is based on "an obligation extraneous to this proceeding." Plan, ⁋ 4.1.4.

This Court has long held that it lacks subject matter jurisdiction to determine the existence of a lien on property that has been removed from the bankruptcy estate. *In re Ostroff*, 433 B.R. 442, 446 (Bankr. D.D.C. 2010). In Ostroff, the Debtor sought to file a complaint in Bankruptcy Court invalidate a deed of trust on property that had been exempted. The Bankruptcy Court dismissed the case for lack of subject matter jurisdiction, stating as follows:

> The parties have not attempted to found subject matter jurisdiction on the existence of defenses to the claims that arise under non-bankruptcy law. I conclude that even though the Ostroffs raise a defense under the Bankruptcy Code to American Home's claims for finding a lien exists, subject matter jurisdiction cannot be founded on that basis. As noted above, American Home asks the court to exercise its "equitable powers" to declare its deeds of trust as valid, first and second lien positions against 3210 Volta Place and to require the Ostroffs to execute any and all documents necessary to perfect its liens. The Ostroffs defend on the basis that the discharge injunction of 11 U.S.C. § 524(a) bars a proceeding to impose a lien, which did not exist previously, on 3210 Volta Place. In *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), a party sought to justify removal of a proceeding on the basis that a prior bankruptcy court order barred the removed action. The Court disagreed, concluding that although the defense arose under federal law (the bankruptcy court order), the complaint could not be viewed as asserting a claim based on federal jurisdiction. The Court observed:

11

> We have long held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *see also Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). A defense is not part of a plaintiff's properly pleaded statement of his or her claim. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ("To bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").
>
> The complaint here addressed only whether the property was free of any lien, a question under District of Columbia law, not under the Bankruptcy Code. In response to the American Home's counterclaim and efforts to impose a lien through equitable powers existing under District of Columbia law, the Ostroffs have raised the defense of the discharge injunction, but a defense is not a basis for finding subject matter jurisdiction. The Ostroffs' complaint did not invoke the discharge injunction, and thus that does not furnish a basis for finding subject matter jurisdiction.

*Ostroff,* 433 B.R. at 444-45.

There is even less of a causal connection to create jurisdiction in this case. The dispute before the Court is between two non-debtors, and the Court's post-confirmation jurisdiction must end somewhere. This dispute has no effect on creditors or the estate. This Court should not hear it.

## Conclusion

Defendant has won numerous battles in this case, having obtained appointment of a Chapter 11 trustee, confirmation of a chapter 11 plan over defiant tenants, and an absent debtor. It has successfully avoided transfer and recordation taxes, and used this Court to obtain title to its collateral in much cleaner form than existed before. But now it has stretched its arguments too

12

thin. To ask this Court to use its credit bid to extinguish a senior lien is to meet its own Waterloo. This Court should not come to the rescue this time.

      WHEREFORE, YSRTL LLC TES Custodian respectfully requests that the Court deny the Motion to Dismiss, and grant such other relief as is appropriate and proper.

Dated:  February 9, 2024         Respectfully submitted,

                                      /s/ *Justin P. Fasano*
                                      McNamee, Hosea, , P.A.
                                      Justin P. Fasano, Esquire (MD21201)
                                      6404 Ivy Lane, Suite 820
                                      Greenbelt, MD 20770
                                      Phone: 301-441-2420
                                      jfasano@mhlawyers.com
                                      *Counsel for YSRTL LLC TES CUSTODIAN*

## CERTIFICATE OF SERVICE

      I hereby certify that on this February 9, 2024, a copy of the foregoing was served by CM/ECF to all parties receiving notice thereby.

                                        /s/ *Justin P. Fasano*
                                        Justin P. Fasano